May it please the court. Good morning. My name is Glenda Carey and it's my privilege to represent Mr. Ronald Wulf. Mr. Wulf was shackled, wearing ankle chains during his trial. There were no judicial findings and no exploration of less restrictive alternatives before he was shackled. He objected to the shackling. His attorney informed the court that he was wearing the shackles and that he didn't want the jurors to see them and that he wanted them off. Is there any evidence in the record that the jury did see the shackles? No, there is no evidence in the record. That's kind of where I have to, I get hung up because clearly it's a constitutional violation in general. Usually it would be structural error, but the judge took two specific steps with respect to voir dire and testimony. And then as Judge Hawkins mentions, there's nothing in the record to even support that the jury would have seen, given whatever the configuration of the courtroom and no objections. So with that evidence, how do you get over that hurdle? Because shackling is inherently prejudicial. It is not just that the jury might see the shackles. It's prejudicial from the client's perspective, from the defendant's perspective. When you look at the Spain factors, there's five factors. And four of those five do not involve the jury seeing the defendant in shackles. The first one does, and it might reverse the presumption of innocence. But the second, shackles may impair the defendant's mental faculties. Is there any evidence that his faculties were impaired? It may or may not. We don't have a record below that. There was no claim that it impaired his mental faculties. He didn't say, I can't think, I can't talk to my attorney. There was nothing. You're speculating that there may have been or there may not have been. Is that a basis for us to find in your favor? I'm not just speculating. I'm asserting that the court is required at the outset to make these determinations, to make these findings. Let's stipulate that there was error in the court's procedure. We review under harmless error. What is the prejudicial error? My argument is that this is not to be reviewed under harmless error. You want structural error. Correct. Is there a case that says the shackling is structural error? We have the Holbrook v. Flynn and Deck v. Missouri where shackling, but I'll concede that in Deck v. Missouri the shackling was visible. However, the language there is that shackling will often have negative effects that cannot be shown from a trial transcript. And I think that this is the kind of error that it's not, it doesn't have to be visible to the jury to be prejudicial to the defendant because of the mental faculty issues. But there was no claim of that at the trial. If there was some claim and some evidence outside the presence of the jury that the defendant found it difficult to communicate with counsel and, therefore, his defense was somehow prejudiced, it would be a different matter. Well, we don't have that record below. I have to concede that there was not that claim made below. Could I just twist it a little different way? And I'm wondering about this. The way the Supreme Court, I mean the cases read, I think, on shackling is you're free, you have constitutional right to be free of shackles before a jury. If this had been a bench trial, would you make the same arguments on the other spam factors? Certainly. I mean, I think that the court would be aware and would be able to disregard the fact that he's shackled and that he's in custody, and courts are used to analyzing those sorts of issues. But I think, certainly, it's the kind of thing that isn't subject to quantitative analysis, and that's why it's structural error, is because you can't look at how much it impacted the defense. We can't judge that. Whether a record is made or not, whether the defendant makes a claim of it or not, it's a subtle thing. The court told the defendant that if there were bench conferences, that he would just sit back and he wouldn't participate in those. So that's one thing where he was prohibited from participating in. Of course, at least in districts where I've tried cases, that typically is the case that, for other security reasons, the defendant stays at the table with the marshals and then the bench conferences are up here. I don't have a record of how often it happens and how often it doesn't, but here he was told he was not to participate. And you don't know how much is that going to influence his attorney from asking for a bench conference. And also, one thing that is, you know, the jury, we have no record that the jury saw shackles. However, we do have him testifying, and we do have a break immediately before he testifies and immediately afterwards. We have other witnesses who come and are called to the stand, and the jury sees them walk forward, and here they notice that he doesn't walk forward and he's just suddenly there when they return. And things like that, so jurors can figure it out, even if they don't see the shackles. Anybody that's been involved before, you know, could possibly realize that he was shackled. Do you have any juror's declarations that that's what they inferred? No. My argument is that this is a structural error, and even under a plain error analysis, my first position is that it was objected to appropriately in the trial court. And the government asserts that it wasn't, but even under a plain error analysis, I think that all of the elements are met. And even if it's not structural error, I think that it affects substantial rights. Being shackled affects substantial rights of the defendant. He has that substantial right to be free from shackling, and that did not occur here without any judicial thought put towards it at all. So even if it's not structural, I think that he was prejudiced just by the fact of being shackled and having those mental faculties and communication between him and his lawyer. The dignity and decorum of the courtroom, the judicial proceedings, and then the possibility of pain also. All of those factors, four of the five Spain factors, don't involve the jury seeing it. Don't many of those factors require some articulation of the difficulty to the court? Well, here How was the judge, the trial judge, supposed to know that, for example, the defendant is uncomfortable, it's impairing his ability to communicate with counsel unless counsel says something? The court was confronted with the fact that the defendant was in shackles. The court had an obligation, a constitutional obligation, to make findings, to pursue less restrictive evidence. I understand your argument, and you've now repeated it about three times. I'd like an answer to my question. For example, one of the Spain factors is that it's impairing the ability of the defendant to communicate with his or her counsel. How is a trial judge, a district judge, supposed to know that that's happening unless the defense attorney articulates that? My position is that it is inherent. It is an automatic situation when a defendant is shackled that that possibility exists. Did it, in fact, occur here? I don't know. But just being shackled is something that is not allowed. It's structural error because it's similar to other issues that can't be quantitatively analyzed. And then the fourth Olano factor being the seriously affecting the fairness, integrity, and public reputation of judicial proceedings or public reputation. It's one of those three things that has to be met. And here, shackling both the integrity of the system and public reputation, I think there would be an outcry if people knew that defendants were being shackled for no reason. Would you like to save the remaining time? I would. Thank you. Good morning, Your Honors, and Ms. Carey. I'm Kim Sayers-Fay, and I'm honored to represent the United States. I was trial counsel in this case. Did you ask the trial judge to make findings? I did not. You know, the first thing I thought when I read the record is, where was the trial counsel? Because if you want to protect your record on appeal and you know that constitutionally he's supposed to make the findings, it seems to me incumbent on the government. I do now. I do now, Your Honor. Okay. So the next trial. Yes. Yes, Your Honor. And I would say, both in my defense and in the defense of the trial judge, that I think if you read the way that the objection was posed, it was posed by defense counsel as an objection to the line of sight. And counsel said, you know, there was a colloquy that ensued about, where are the jurors going to be sitting? Are they going to be back there? And this is at SCR 9 through 11. And counsel said, are they going to be back there? And my concern is, and the judge went on to explain exactly where the potential jurors would be seated. How are we supposed to know whether a defendant, in the absence of findings, is Charlie Manson or a choir boy? You have no way, Your Honor. You have no way. I mean, and I have to agree. It's clearly error, and the government has agreed to that. It was error for the court not to make individualized findings that are required. I think the key to this case is this court has, on at least four occasions and four published opinions, found that that type of error, that precise type of error, is susceptible to harmless error review. It is not susceptible to structural error review. And that was most clearly addressed in the Castillo v. Stainer decision, where they considered precisely the arguments that Ms. Carey is making. And it goes through the analysis of what is structural. It's structural if you're forcibly medicated. It's structural if you are tried before a judge who has an inherent conflict of interest. And this court said, shackling, while odious in the last resort, does not strip a trial of its basic elements, and at least in its less extreme forms, is susceptible to harmless error analysis. You tried the case? I did. Did you know the defendant was shackled before the trial started? I did not. And not until, in fact, that's in the record as well, SDR 9, when Mr. Dattin, his defense counsel, said defendant is shackled, I said, I can't see the shackles. I did not know he was shackled. This is the first time that had come up in my career as a prosecutor. Obviously, I would handle that differently going forward. The case agent, who investigated this for you? This was investigated principally by Alaska State Troopers and adopted by Alcohol, Tobacco, and Firearms and Explosives. So my case agent was an agent. You had a case agent? I did. He or she didn't tell you that the individual was shackled? No, and in fairness, I'm not even sure that he was aware. In my experience, and I don't want to argue outside the record, but it is my understanding that frequently those determinations are made between the marshals and the judge. I don't know what went on here, and I don't want to represent that something along those lines did, but it's come to my attention that we need to make certain that that does not occur in the future. Obviously, this is something that the attorneys have to be aware of, but from my vantage point, I could not see it. Is there any other than that colloquy in the record, is there any other testimony or evidence in the record that suggests that the jury was shielded and did not see anything? There is only the colloquy at which point Judge Beislein made it very clear that they cannot see the shackles. It was very clear, and it was his objective to make certain that the jurors could not see the shackles. And so he said, all right, so we're going to take the shackles off for now. We'll take the ankle restraints off now. If and when you testify, the jurors will be excused. You may come up. And I pointed out that that was, in fact, done, because Mr. Wolfe did testify on two occasions. And I was looking through my record because I recall quite a number of breaks, so I don't think there's any evidence that the jurors could infer simply from the fact of breaks that he was in shackles. Was he the only witness that the jury did not observe, approach, get sworn in, and take the witness down? Judge Hawkins, I was just looking through the record to see if I could ascertain that, and I wasn't able to review that quickly enough. I'd be happy to submit a supplement on that, because in my memory, I believe there were many breaks, and I don't believe that he was likely the only witness. Were there other witnesses that when the jury returned to the box, there was a witness sworn in and sitting down? That would only – I'm trying to think. That would be odd with a civilian witness who's not in custody, and all the other witnesses were not in custody. So all the other folks, I assume they would have seen, walked to the stand. I don't know if we ever would have taken a break and gone ahead and had the witness seated. I think that would be probably peculiar. Unusual. Unusual. They might have them seated, but usually on the initial point when they're sworn in, they walk up here, and then they walk into the witness box. So they might be sitting there when the jury reinsurance, but usually they're sworn in with the jury standing there. But even if he had been unshackled, I'm not certain that the practice would have been to have him freely walk across the courtroom in the presence of the jury. I think even with an unshackled witness, the custom and practice would be to have the defendant seated while the jury is out for courtroom security purposes. But I think that to some extent, with the benefit of hindsight, I should have done you better service in my briefing and pointed you to the fact that there was overwhelming evidence of guilt in this case. So even if you were to find, I think you're under the harmless error rubric. And then it's my argument, and I think the better argument, that he did not object to shackling generally. But even if the court disagrees with me on that point, and you say, no, he preserved his objection, and it is therefore the government's obligation to show that the shackling did not contribute to the verdict obtained, the court then has to look at the evidence that was presented. In this case, it was absolutely overwhelming, and I have a succinct summary of that here. The trial was for being a felon in possession of a firearm. He stipulated to his prior felony, so the only issue was did he possess a firearm. And on that point, his uncle took the stand and testified that he went to a cabin. This is at SER 135 through 139. He went to a cabin. There were shots being fired. He walked in. He found Mr. Wolfe, whom he'd known since childhood. He found him shooting. He was, in fact, shot at. They had an emotional discussion. Mr. Wolfe talked about killing himself. And ultimately, after some 20 minutes of further shooting, Mr. Wolfe handed over the gun, the .22 pistol, to Mr. Hamilton. Mr. Hamilton kept that gun and later gave it to police. The firearms expert testified that a .22 casing that was found in the pocket of Mr. Wolfe the next morning matched the gun, had been fired from the .22 that Roger Hamilton had taken from the defendant. This is an interesting tact, and you may be absolutely right, but I take it your argument that you're now presenting is that the strength of the case on the merits can be sufficient to overcome any prejudice that occurred from a lack of the required findings to have a defendant shackled. Yes, and that's why I read. In other words, it has the harmlessness we look to is not whether the shackling created harm, but the strength of the merits case. Well, it is both. The strength of the merits case, plainly, is important and is part and parcel of the harmless error analysis. So a prosecutor can sit there and say, well, you know, the judge didn't make the findings. Yes. The defendant shackled, but I've got a really good case. Yes. Go to heck with it. Well, and I don't want to make light of it, but yes, that is the structure of the analysis, and I believe that's what happened. Well, I have two cases from other districts. There's unfortunately a paucity of cases from the Ninth Circuit where this issue came up on direct review, so you're using the appropriate, well, the standard of review that the defendant argues applies. The only one is an unpublished case from this district, which is not citable because it's pre-2007. But there is a case from the Fifth Circuit, and that's Hatton v. Quarterman, 570 F. 3rd, 575, where they said it was not prejudicial because there was overwhelming evidence. Is this in your brief? It was not, Your Honor. Again, the benefit of you want to, yeah. I will fill out a paper and give that to you. I would note it's interesting in the, I think it was in Castillo v. Stainer. There were two opinions in that case. Originally, the court kind of goofed the difference between is it Chapman harmless error or is it plain error, and in the first opinion that was later withdrawn before they corrected the standard, they mentioned that issue of is there overwhelming evidence. And I believe that was also, if I'm not mistaken, I think there was also a factor in Rich v. Calderon. But certainly whether you evaluate harmless error under the plain error standard, because as the government contends, the objection was not made to Shacklin generally, which is why Judge Beislein did not go into it. I wouldn't go there. Okay. I would stick with Chapman error. Okay. Yes, Your Honor. You said that the Fifth Circuit was the one you didn't cite in your brief, talked about the strength of the state's evidence against the defendant as being a consideration in termination of harmless error. Yes. Have you read Larson v. Palmateer, which is one of our cases? Yes, I have read that case. That has the same language. I beg your pardon, Your Honor. I beg your pardon. I believe that that is a well-accepted formulation of the harmless error test, and I was really remiss not to hammer that in my brief, because I would have had to have been extremely talented to lose this case. He had pled guilty to assault with a firearm on the same night in State Court. Right. You could lose the appeal. You might not have lost the case, but you could lose the appeal if you're not careful about the constitutional requirements. Absolutely. And the standard of review. Absolutely. And I don't want to make light of the fact that he was shackled, but there is nothing in the record to suggest that it impaired his mental faculties, that he was not seated right next to his counsel, that it somehow impaired his ability to discuss with his counsel. There is no suggestion, there was no effort made, to show that jurors, notwithstanding the configuration of the courtroom, nonetheless perceived the shackles. This record is just entirely devoid of any suggestion that the shackles were perceptible. And, in fact, the record does show that here, as in Rich v. Calderon, the government and the court took pains to make sure that the jurors did not see the shackles. So the only evidence with regard to perception of the shackles actually favors the government. But I would say that given the paucity of the actual absence of any evidence in the record, that this impacted, that this affected, rather, the defendant in any way, or that it was perceptible by the jurors, coupled with the fact that this was a slam dunk with regard to the evidence presented, he had confessed, and he had, we played the audio from his state court change of plea, where he said, yes, I plead guilty to assaulting my friend, Bobby Workman, on that same night with a firearm. We played that. That was Exhibit 14. We admitted his written change of plea in that same case, and then we put on the witness who said, I took the gun from his hand that night, and a firearms expert who said the shell casing from his pocket match was fired from that same gun. So there was nowhere for him to go from an evidentiary perspective, and that ultimately is, I think, what most dooms his case. All right. Your time has expired. We have your argument in hand. Both in its briefing and in its argument, the government does not address the structural error position that I maintain, and this is a structural error. This is similar to being forcibly medicated, that the defendant being in the shackles, from his perspective, it's very similar. You know, I'm sympathetic in principle. It's just that these other cases don't seem to adopt that approach, both in the Ninth Circuit, and I'm looking at the Fifth Circuit case here that she cited, the Hatton v. Quarterman, which is really similar to our cases. So I guess the question then is how you get around cases like, is it Castillo? Yeah, Castillo and Duckett out of our circuit. Well, Castillo, I submit, is distinguishable on many fronts. It's not a direct review of a federal conviction, so it's different terminology in the harmless error standard. So I think that's the first distinction. How do you get around Larson v. Palmatier? That's a 2008 case. I have... The restraints, the appearance and visibility of the restraints, the nature of the crime, et cetera. It's exactly what the Fifth Circuit said. Well, I submit that the court... You want us to make new law. Well, I want you to apply the Spain factors from the defendant's perspective and to hold it is inherently prejudicial for a client to be sitting there shackled. If it were inherently prejudicial in Larson v. Palmatier, they wouldn't be considering... I don't know the arguments that were made, and if they... I'm sorry, I don't have that case on the top of my head. If they argued structural error or not, if they... I can't make a record that is going to overcome harmless error because I don't have a record of how it impacted him. But I do think that shackling is structural. For over 200 years, there's been case law and eloquent words about how harmful it is for the defendant and the whole judicial system. And that's why it should be structural and the burden should be on the government and the court should make the findings up front or he gets a new trial. Thank you. Well, next time you know what to do if you're at trial and this happens, don't you? To make a record, yes. Absolutely. All counsel know that now. And keep making it. Thank you. Thank you. Thank you both for your arguments this morning. The case of United States v. Wolf is submitted. Our next case for argument is United States v. Burns.
judges: Hawkins, McKeown, Bea